UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

JOHN WILLIAM HANSON III,           )
                                   )
            Plaintiff,             )
                                   )
v.                                 )        No.:   3:19-CV-46-TAV-HBG
                                   )
LESZEK KWIATKOWSKI and             )
DYLAN JONES,                       )
                                   )
            Defendants.            )


## <u>MEMORANDUM OPINION</u>

As previously noted by this Court, "dogs might be a man's best friend, but they generally are not allowed in the backcountry of a national park." [Doc. 65-10, p. 1]. After a visit to Cades Cove with his two unrestrained dogs, plaintiff was convicted of resisting arrest under 18 U.S.C. § 111(a)(1) along with several other minor offenses. He now brings this civil action against National Park Service Rangers Leszek Kwiatkowski and Dylan Jones based upon alleged violations of his Fourth, Fifth and Fourteenth Amendment rights, pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) [Doc. 37, p. 2].

Defendants have filed a motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. 65] with an accompanying memorandum [Doc. 66]. Plaintiff responded in opposition [Doc. 70], and defendants replied [Doc. 71]. For the reasons explained below, defendants' motion to dismiss [Doc. 65] is **GRANTED** and this case is **DISMISSED**.

## I. Background

This case arises out of an arrest that took place on February 3, 2018, in the Great Smoky Mountains National Park [Doc. 37, ¶ 8]. After receiving reports of an orange vehicle driving the wrong way on the Cades Cove Loop Road to the Abrams Falls trailhead parking area, Ranger Kwiatkowski proceeded to the parking lot area where he located the orange vehicle and observed a dog bed and leash in plain view in the backseat [*Id.*, ¶ 9]. After hearing additional reports, from several hikers and a park volunteer, of an unidentified white male in his twenties with red hair, a red beard, and two unrestrained dogs on the Abrams Falls trail, Ranger Kwiatkowski proceeded to hike the 2.5 miles to Abrams Falls [*Id.*, ¶¶ 8–11].

Upon arriving at Abrams Falls, Ranger Kwiatkowski located plaintiff, who matched the above-mentioned description [*Id.*, ¶ 11]. Ranger Kwiatkowski observed plaintiff and two unrestrained dogs standing near an unauthorized fire with a backpack on the ground nearby [*Id.*, ¶ 12]. Ranger Kwiatkowski then observed plaintiff attempt to extinguish the fire, grab the backpack, and walk away [*Id.*, ¶ 13]. As plaintiff did this, Ranger Kwiatkowski observed a large knife strapped to the outside of the backpack [*Id.*]. Over the next few minutes, Ranger Kwiatkowski gave plaintiff several orders which plaintiff followed at times, but ignored at other times [*Id.*, ¶¶ 13, 15]. When Ranger Kwiatkowski asked plaintiff for his name, plaintiff provided a false name [*Id.*, ¶ 14]. Plaintiff then told Ranger Kwiatkowski that he was cold due to the weather and the fact that he was wet from swimming, and he wanted to put on his pants, which were in his backpack [*Id.*, ¶ 15].

2

Ranger Kwiatkowski ordered plaintiff not to go near the backpack [*Id.*] and informed plaintiff that he would get the pants for him [Doc. 66, p. 6]. When Ranger Kwiatkowski saw plaintiff moving toward the backpack, he first directed him to stop, then pushed on plaintiff's back, forcing him to the ground [Doc. 37, ¶ 15]. Plaintiff then requested to hike back to the trailhead [*Id.*].

During the 2.5-mile hike back to the trailhead, Ranger Kwiatkowski walked a short distance behind plaintiff, carrying plaintiff's backpack [*Id.*, ¶ 20]. Plaintiff held one dog by its leash while the other dog walked nearby [*Id.*]. Along the way, Ranger Jones met up with Ranger Kwiatkowski [*Id.*, ¶ 21]. The two rangers continued to accompany plaintiff and his dogs back to the trailhead parking lot [*Id.*]. During the hike back, plaintiff alleges that he complied with all orders, did not attempt to flee, did not resist, and remained non-violent[1] [*Id.*, ¶¶ 23–27].

Once the trailhead parking lot came into view, Ranger Kwiatkowski attempted to place plaintiff under arrest by grabbing his right arm from behind while Ranger Jones grabbed plaintiff's left arm [*Id.*, ¶ 31]. In response, plaintiff tensed up and the officers instructed him to relax and place his hands behind his back [*Id.*, ¶ 33]. The rangers proceeded to push plaintiff to the ground while plaintiff struggled [*Id.*, ¶ 34]. Plaintiff alleges that the rangers then repeatedly hit and punched in the back of the head[2] [*Id.*, ¶ 35].

---

[1] Defendants assert that they had to repeatedly ask plaintiff to "walk," "stop," and "not run" because it appeared that plaintiff was trying to outpace them [Doc. 66, p. 6].

[2] Defendants assert that they "attempted to force [plaintiff] down" during the "struggle" but do not specifically mention hitting plaintiff in the back of the head [Doc. 66, p. 7].

3

During this altercation, plaintiff was able to slip out of his jacket and run away from the rangers toward the trailhead parking lot, ignoring several commands to stop [*Id.*, ¶ 36]. Both rangers gave chase and unsuccessfully deployed their tasers before Ranger Jones deployed his taser a second time and hit plaintiff [*Id.*, ¶¶ 36–40]. At that point, plaintiff fell to the ground, and Ranger Jones ran over and rolled plaintiff onto his face and stomach [*Id.*, ¶ 40]. Ranger Jones restrained plaintiff on the ground by placing his knee on plaintiff's lower back while continuing to tase him [*Id.*]. When Ranger Kwiatkowski caught up to Rangers Jones and plaintiff, the rangers began attempting to subdue plaintiff and place him in handcuffs, instructing plaintiff to place his right hand behind his back [*Id.*]. However, plaintiff told the rangers that he was unable to do so, and both rangers continued to pull at his right arm and Ranger Jones continued to repeatedly shock plaintiff [*Id.*]. In a period of less than a minute, plaintiff was stunned or shocked on 4 separate occasions, between 5 to 11 seconds on each occasion [*Id.*]. Plaintiff then started twitching, convulsing, and suffering from a seizure, and was eventually airlifted to the hospital to receive treatment for his seizure and other injuries [*Id.*, ¶¶ 41–43].

In September 2018, plaintiff proceeded to trial before United States Magistrate Judge H. Bruce Guyton on the petty offenses and a jury on the charge of resisting arrest under 18 U.S.C. § 111(a)(1) and was convicted as charged [Doc. 65-10, pp. 1, 4]. Judge Guyton found plaintiff guilty of five petty offenses including: Pet in a Closed Area, 36 C.F.R. § 2.15(a)(1); Unrestrained Pet, 36 C.F.R. § 2.15(a)(2); Fire in a Closed Area, 36 C.F.R. § 2.13(a)(1); Interfering with Agency Functions – Disobeying Lawful Orders,

4

36 C.F.R. § 2.32(a)(2); and Interfering with Agency Functions – Providing False Information, 36 C.F.R. § 2.32(a)(3) [*Id.*, p. 3]. A sixth charge of Possession of a Controlled Substance, 36 C.F.R. § 2.35(b)(2) was later dismissed at the government's request [*Id.*]. The jury found plaintiff guilty of "knowingly[,] consciously, and voluntarily act[ing] to forcibly resist, oppose, impede, and interfere with a federal officer, in the performance of the officer's duties." [Doc. 65-1].

## II.    Legal Standard

Defendants have brought a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Although this standard does not require 'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "merely consistent with" liability, "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice." *Id.* Finally, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). However, the Court need not accept legal conclusions or unwarranted factual inferences as true. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

## III. Analysis

### A. Defendants' Exhibits

The Court first addresses whether it may consider defendants' exhibits when reviewing the motion to dismiss. Defendants have submitted eleven exhibits and two body camera footage discs with their motion to dismiss. Nine of the exhibits are court records from the criminal proceedings underlying this action, and two are statements verifying the body camera footage discs.

Generally, in reviewing a motion to dismiss under Rule 12(b)(6), a court should consider only what is contained in the pleadings. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88–89 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)),

*overruled on other grounds, Swierkiwicz v. Sorema, N.A.*, 534 U.S. 506 (2002). However, there are several exceptions to this rule. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds*, *Swierkiwicz*, 534 U.S. at 506.

First, a court may consider public records and matters of which a court may take judicial notice. *Id*.; *New Eng. Health Care Emp. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). The Federal Rules of Evidence state that "[t]he court . . . must take judicial notice [of adjudicative facts] if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). Specifically, a court may take judicial notice of public records when ruling on a motion to dismiss. *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017); *see also* Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding").

In the instant case, the nine exhibits that are court records are adjudicative facts from the criminal proceeding underlying this action. As the defendants have requested that the Court take notice of these adjudicative facts and supplied the Court with the necessary information, the Court must take judicial notice of the nine exhibits. Furthermore, consideration of public records when ruling on a motion to dismiss is especially appropriate in cases such as this, where determining whether plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), necessarily involves a review of records from the criminal proceeding underlying this action.

Next, a court may consider documents that a defendant attaches to a motion to dismiss if the documents are referenced in the complaint and are central to plaintiff's

7

claims. *Weiner*, 108 F.3d at 89. Further, a court may consider videotape evidence on a motion to dismiss if the allegations in the complaint contradict objectively verifiable facts from the videotape evidence that render a plaintiff's allegations implausible. *Bailey*, 860 F.3d at 386–87.

Defendants have also submitted two body camera footage discs and two exhibits that verify the discs [Docs. 65-3, 65-4, 67]. Neither party disputes that the discs contain footage of the events described in the complaint and that these events are central to plaintiff's claims [Docs. 66, 70, 71]. Plaintiff maintains that the facts alleged in his complaint are not in direct opposition with the body camera footage [Doc. 70, pp. 7–8]. However, defendants maintain that certain allegations in the complaint contradict objectively verifiable facts from the body camera footage [Doc. 71, pp. 4–5]. At this time, the Court need not decide whether the complaint contradicts objectively verifiable facts in its determination of whether it may consider the body camera footage. Since the plaintiff refers to the body camera footage in his complaint and the events captured by the body camera footage are central to plaintiff's claims, the Court may consider the body camera footage in its review of the motion to dismiss. *See Weiner*, 108 F.3d at 89. Nevertheless, a review of this footage is not necessary for the Court's disposition of the instant motion, as discussed *infra*.

## B. *Heck* Bar

The Supreme Court ruled in *Heck v. Humphrey*, 512 U.S. 477 (1994) that when a plaintiff seeks damages in a § 1983 suit, "the district court must consider whether a

judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. However, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* (emphasis in original) (footnotes omitted). Although *Heck* involved a § 1983 claim, its rule applies equally to claims brought under *Bivens*. *Robinson v. Jones*, 142 F.3d 905, 906–07 (6th Cir. 1998).

To succeed on a *Bivens* claim, a plaintiff must show: "(1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law." *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015). To determine whether a successful *Bivens* claim would invalidate the underlying criminal conviction, the Sixth Circuit requires a precise inquiry whereby "the court must look both to the claims raised under [*Bivens*] *and* to the specific offenses for which the [*Bivens*] claimant was convicted." *Swiecicki v. Delgado*, 463 F.3d 489, 493 (6th Cir. 2006) (quoting *Hughes v. Lott*, 350 F.3d 1157, 1161 n.2 (11th Cir. 2003)) (internal quotation marks omitted) (emphasis in original), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007).

9

## 1. False Arrest & Imprisonment Claims

Plaintiff first contends that defendants violated his constitutional rights in their continued "seizing, detention, and prolonged detention" of his person [Doc. 37, pp. 12–14]. Plaintiff does not dispute that defendants had probable cause to arrest him. Rather, he claims that defendants violated his constitutional rights by detaining him for the 2.5-mile hike back to the trailhead [Doc. 70, p. 17]. Defendants assert that plaintiff's false arrest and imprisonment claims are barred by *Heck* because there was probable cause for plaintiff's arrest and plaintiff was convicted of seven[3] charges [Doc. 66, p. 11]. Moreover, defendants contend that, to the extent that plaintiff's false arrest and imprisonment claims are based on his belief that their actions in walking him back to the trailhead were unreasonable in manner or duration, his amended complaint and response identify no facts supporting such a conclusion [Doc. 71, p. 8].

To the extent that plaintiff raises a claim of "false arrest," the Sixth Circuit has held that "[a] false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff," *Webb*, 789 F.3d at 666 (quoting *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 667 (6th Cir. 2005)), and "probable cause is a defense to false arrest." *Id.* (quoting *Walker v. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988)). Thus, "'[t]he existence of probable cause for an arrest totally precludes any section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution[.]" *Watson v.*

---

[3] The record reflects that plaintiff was convicted of only six charges because the charge for Possession of a Controlled Substance, 36 C.F.R. § 2.35(b)(2), was later dismissed at the government's request [Doc. 65-10].

*City of Marysville*, 518 F. App'x 390, 392 (6th Cir. 2013) (quoting *Mark v. Furay*, 769 F.2d 1266, 1269 (7th Cir. 1985)).

"[I]t has been long settled that the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014) (alteration added) (internal quotation marks omitted). Further, a guilty or no-contest plea to criminal charges, and the finding of guilt by the court, estops a plaintiff from asserting that police officers acted without probable cause. *Walker v. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988).

Here, neither party contests that defendants had probable cause to arrest plaintiff [*See* Doc. 37, p. 13]. To establish his false arrest claims, though, plaintiff must prove a lack of probable cause supporting the arrest. *See Webb*, 789 F.3d at 666. Thus, plaintiff's alleged false arrest claim is precluded by his own admission of probable cause. However, the Court also finds that, if a court's finding of guilty after a guilty or no-contest plea precludes a challenge to the existence of probable cause, *see Watson*, 518 F. App'x at 392, the instant findings of guilt after a combination bench and jury trial also would preclude plaintiff from challenging the existence of probable cause in this case. And, ultimately, plaintiff was convicted of those offenses that occurred prior to his encounter with law enforcement [Doc. 65-2, p. 2]. Thus, the officers necessarily had probable cause to arrest plaintiff for those charges at the time when they first encountered him. Accordingly, any false arrest claim, which would require plaintiff to establish a lack of probable cause for his arrest, would necessarily imply the invalidity of his convictions, and is therefore barred

11

under *Heck*. For this reason, defendants' motion to dismiss plaintiff's false arrest claims will be **GRANTED** and plaintiff's false arrest claims will be **DISMISSED**.

However, the same analysis does not apply to plaintiff's "false imprisonment" claim. Although plaintiff labels his relevant claims as "False Arrest/Imprisonment" [Doc. 37, pp. 12–13], the Court "must look beyond labels to the facts alleged in the complaint." *Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001). And, while a true "false imprisonment" claim might be barred by *Heck* for the same reasons as a false arrest claim, *see Watson*, 518 F. App'x at 392, a review of plaintiff's amended complaint indicates that plaintiff's claim is more properly characterized as a claim of unreasonable seizure in violation of the Fourth Amendment [*See* Doc. 37, pp. 12–13]. Therefore, the question becomes whether a finding that defendants' actions in hiking back to the trailhead with plaintiff was an unreasonable seizure would undermine plaintiff's convictions.

The Supreme Court has suggested that at least some Fourth Amendment claims are barred by *Heck*. *Harper v. Jackson*, 293 F. App'x 389, 391 (6th Cir. 2008) (citing *Wallace*, 549 U.S. 384). The district court, however, must determine on a case-by-case basis "whether a favorable Fourth Amendment judgment would impugn the validity of an outstanding conviction." *Id.* at 391–92.

Of particular relevance, the Sixth Circuit has held that *Heck* did not bar an unreasonable seizure claim when, under Ohio law, the plaintiff was barred from raising the unreasonableness of the officers' seizure of his person as a defense to his state law charge of assault. *Cummings v. City of Akron*, 418 F.3d 676, 683 (6th Cir. 2005). The Sixth

12

Circuit reasoned that, because the Ohio Supreme Court had explicitly rejected the common law rule that an individual may resist illegal arrests, any illegal seizure of the plaintiff's person was not a defense to the underlying assault charge. *Id.* at 683–84. Therefore, a judgment in plaintiff's favor on his Fourth Amendment illegal seizure claim would not imply the invalidity of his conviction or sentence. *Id.*

The criminal statute at issue here, section 111(a)(1), has four elements: the government must show that a defendant (1) forcibly (2) assaulted, resisted, opposed, impeded, intimidated, or interfered with (3) a federal officer (4) in the performance of his duties. *United States v. Milliron*, 984 F.3d 1188, 1194 (6th Cir. 2021). Resisting arrest under § 111(a)(1) is a general intent crime, rather than a specific intent crime, and thus, "any violator will be punished solely for the . . . resistance to . . . a designated individual" and "[n]o other intent on the part of a defendant need be shown[.]" *United States v. Veach*, 455 F.3d 628, 631 (6th Cir. 2006); *see also Milliron*, 984 F.3d at 1194 (Section "111(a) is a general intent crime"). Thus, a defendant need only "knowingly, consciously, and voluntarily commit[] an act which the law makes a crime" and § 111(a) "does not require a showing of bad purpose." *Milliron*, 984 F.3d at 1194 (internal quotation marks omitted). It appears that the unreasonableness of the officers' seizure of plaintiff would not be a defense to a charge under § 111(a)(1), because such defense would address a criminal defendant's specific intent, an element that is not necessary for a conviction under § 111(a)(1). Thus, the Court does not find that a judgment in plaintiff's favor on his

13

unreasonable seizure claims would necessarily undermine his conviction for resisting arrest under § 111(a)(1).

However, the Court also must determine whether the jury's rejection of plaintiff's defense of self-defense, at his underlying criminal trial, would be undermined by a finding in plaintiff's favor as to his unreasonable seizure claim. At trial, the Court used the Sixth Circuit pattern jury instruction for self-defense [Case No. 3:18-cr-61, Doc. 71, p. 74 ("in effect, then, we're just going to be using the Sixth Circuit pattern jury instruction for self-defense")]. At the time of plaintiff's criminal trial, the Sixth Circuit pattern jury instruction on self-defense stated:

> (1)    One of the questions in this case is whether the defendant acted in self-defense.
>
> (2)    A person is entitled to defend himself against the immediate use of *unlawful force*. But the right to use force in self-defense is limited to using only as much force as reasonably appears to be necessary under the circumstances.
>
> (3)    The government has the burden of proving that the defendant did not act in self-defense. For you to find the defendant guilty, the government must prove that it was not reasonable for him to think that the force he used was necessary to defend himself against an immediate threat. Unless the government proves this beyond a reasonable doubt, you must find him not guilty.

Sixth Circuit Pattern Criminal Jury Instruction § 6.06 (2017) (emphasis added).

Notably, this instruction only informed the jury that plaintiff would be acting in self-defense if he was defending himself against "unlawful force" [*see id*.], but stated nothing about whether plaintiff could have been resisting an unreasonable or unlawful seizure or whether such could constitute a defense to the charge of resisting arrest. Thus, the Court

14

does not find that a judgment in plaintiff's favor on his unreasonable seizure claim would necessarily undermine the jury's rejection of plaintiff's claim of self-defense at the underlying criminal trial, and therefore, plaintiff's unreasonable seizure claim is not barred by *Heck*. Accordingly, plaintiff's unreasonable seizure claims are not barred by *Heck*.

## 2. Excessive Force/Battery Claims

Plaintiff further maintains that defendants violated his constitutional rights in their "use of force" against him [Doc. 37, pp. 14–16]. However, defendants assert that plaintiff's excessive force and battery claims are barred by *Heck* [Doc. 66, p. 11].

As an initial matter, the Court notes that plaintiff has raised claims which he labels: "Violation of Constitutional Rights Battery," based on the same facts as his excessive force claims [Doc. 37, pp. 14–18]. However, it is unclear how a *Bivens* claim for battery would be any different than a *Bivens* claim for excessive force. Any constitutional violation based on an alleged "battery," would necessarily be the same constitutional violation as the use of "excessive force." Accordingly, the Court finds that plaintiff's "battery" claims are duplicative of his excessive force claims, and the duplicative claims will be **DISMISSED**. The Court will now address whether plaintiff's excessive force claims are barred by *Heck*.[4]

This Court must look both to plaintiff's *Bivens* excessive force claims and plaintiff's specific offenses of conviction to determine whether his *Bivens* claims for excessive force re *Heck*-barred. *Swiecicki*, 463 F.3d at 493. "There are two circumstances in which an

---

[4] To the extent that such claims are not duplicative, however, they are nevertheless dismissed for the same reasons as plaintiff's excessive force claims, as explained *infra*.

15

excessive-force claim may conflict with a conviction: (1) when the criminal provision makes the lack of excessive force an element of the offense; or (2) when excessive force is an affirmative defense to the crime." *Colson v. City of Alcoa*, 458 F. Supp. 3d 887, 910 (E.D. Tenn. 2020) (citing *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010)).

Notably, barring a *Bivens* claim for excessive force based on *Heck* may be inappropriate at the Rule 12(b)(6) stage when the jury in the underlying criminal conviction did not specifically decide whether excessive force was used. *Lora-Pena v. FBI*, 529 F.3d 503, 506 (3d Cir. 2008). The Third Circuit reasoned that "[i]t is conceivable that a law enforcement officer, acting within the scope of his official duties, may use force that is excessive in effectuating a lawful arrest." *Id.*

However, defendants argue that plaintiff's claims are barred because the jury rejected his self-defense claim as a defense to the underlying criminal charge of resisting arrest [Doc. 66, p. 14]. "The Sixth Circuit has recognized that, for purposes of section 111, an individual may make out an affirmative defense of self-defense against a federal law enforcement official who uses excessive force in a narrow range of circumstances." *United States v. Weekes*, 517 F. App'x 508, 510 (6th Cir. 2013) (citing *United States v. Span*, 970 F.2d 573, 577 (9th Cir. 1992)). Specifically, to establish that he was acting in self-defense against a federal official using excessive force, the defendant must show that "(1) a reasonable belief that the use of force was necessary to defend himself or another against the immediate use of unlawful force and (2) the use of no more force than was

16

reasonably necessary in the circumstances." *Id.* at 510–11 (internal quotation marks omitted).

Here, as discussed above, the jury was instructed on self-defense and, specifically, that "[a] person is entitled to defend himself against the immediate use of unlawful force. But the right to use force in self-defense is limited to using only as much force as reasonably appears to be necessary under the circumstances" [*See* Case No. 3:18-cr-61, Doc. 71, p. 74]. Sixth Circuit Pattern Criminal Jury Instruction § 6.06 (2017). Despite this instruction, the jury found plaintiff guilty of violating § 111(a)(1), and specifically found that he violated that section in the following three ways: (1) by starting to walk away and grabbing or attempting to grab his backpack at Abrams Creek Falls; (2) by struggling, breaking free, or running down the trail toward the parking lot and away from the rangers, when they seized plaintiff's arms to arrest him; and (3) by refusing to put his hands behind his back and struggling while the rangers tried to handcuff him [Case No. 3:18-cr-61, Doc. 47].

In his amended complaint, plaintiff contends that Ranger Kwiatkowski and Ranger Jones used excessive force when they "grabbed Plaintiff's arms, attempted to pull them back and violently pushed the Plaintiff to the ground," [Doc. 37, pp. 15–16] which appears to refer to the rangers' actions upon reaching the trailhead [*Id.* at 8–9]. Plaintiff states that, once they reached the trailhead, without warning, Ranger Kwiatkowski grasped his right arm with both hands from behind and Ranger Jones placed his right arm on plaintiff's upper shoulder, grabbed plaintiff's left arm, and attempted to pull [*Id.* at 8]. Plaintiff states that

he was "surprised and frightened," the rangers told him not to tense up and to put his hands behind his back, and the rangers then tried to push plaintiff down while commanding him to "go down" [*Id.* at 9]. As the "altercation" continued, the rangers continued to yell at plaintiff to lay on the ground, and repeatedly hit and punched the back of plaintiff's head and body [*Id.*]. Plaintiff states that, "[a]s a result of the altercation" he "came out of his jacket and became free of the rangers' grasp," at which point he fled for "fear of being further battered by the rangers" [*Id.*].

Plaintiff also contends that the rangers used excessive force by repeatedly using a taser on plaintiff, particularly after he had been subdued and was face down on the ground with his hands behind his back [*Id.* at 19]. According to plaintiff's factual account, the rangers first began deploying their tasers after plaintiff began to flee at the trailhead [*Id.* at 9]. Plaintiff contends that he was yelling "help me" as he ran and was followed by the rangers [*Id.* at 10]. Ultimately, after running "in and out of the woods," Ranger Jones was able to "bring down" plaintiff with his taser [*Id.*]. Ranger Jones ran to plaintiff, rolled him over onto his face and stomach, and placed his knees on plaintiff's lower back [*Id.*]. Ranger Jones also placed his taser onto plaintiff's upper right leg and moved it toward plaintiff's lower back, and in doing so, continued to tase plaintiff [*Id.*]. When Ranger Kwiatkowski arrived, he joined in attempting to place plaintiff in cuffs, and plaintiff was repeatedly commanded by the rangers to put his right arm behind his back [*Id.* at 10–11]. After plaintiff repeatedly informed the officers that he could not put his right arm behind his back, Ranger Jones held down the trigger on his taser to repeatedly shock plaintiff, and

in a period of under one minute, was stunned or shocked on four separate occasions between 5 to 11 seconds each time [*Id.* at 11].

Both of these alleged uses of excessive force are directly linked to the actions that the jury found to have constituted resisting arrest in violation of § 111(a)(1). Specifically, defendants' alleged use of excessive force of pulling plaintiff's arms behind his back and attempting to push him to the ground happened immediately before plaintiff's actions, of struggling, breaking free, or running down the trail away from the rangers, which the jury found to constitute a violation of § 111(a)(1) [Case No. 3:18-cr-61, Doc. 47]. Accordingly, in implicitly rejecting plaintiff's claim that he took such actions in self-defense, the jury necessarily found that plaintiff was not fleeing from a use of unlawful force. Therefore, a judgment in plaintiff's favor on this excessive force claim would necessarily undermine the jury's verdict in the underlying criminal case, and therefore, the excessive force claim is barred by *Heck*.

Similarly, defendants' alleged use of excessive force in tasing plaintiff while he was on the ground appears to be inextricably intertwined with plaintiff's actions in refusing to put his hands behind his back and struggling with the rangers while they tried to handcuff him, which the jury found also constituted a violation of § 111(a)(1) [Case No. 3:18-cr-61, Doc. 47]. Plaintiff seems to imply that he was unable to place his hands behind his back after the initial tasing [Doc. 37, pp. 10–11], but this account directly contradicts the jury's finding that plaintiff "refused" to place his hands behind his back [Case No. 3:18-cr-61, Doc. 47]. And the jury's implicit conclusion that plaintiff was not acting in self-defense

19

when he refused to place his hands behind his back and struggled with the officers would be undermined by a judgment in plaintiff's favor on this claim of excessive force. Therefore, this claim of excessive force is also barred by *Heck*.

Because each of plaintiff's claims of excessive force are barred under *Heck*, defendants' motion to dismiss will be **GRANTED** as to these claims, and plaintiff's claims of excessive force are **DISMISSED**.

### C.    Qualified Immunity

Next, defendants assert that they are entitled to qualified immunity on all of plaintiff's claims [Doc. 66, pp. 4, 15–16].  Qualified immunity protects public officials "from undue interference with their duties and from potentially disabling threats of liability." *Guertin v. Michigan,* 912 F.3d 907, 916 (6th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)).  Qualified immunity "'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions,' 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 917 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)) (internal quotations omitted)) (alteration in original).  The doctrine provides "immunity from suit," and is not a "mere defense to liability."  *Id.* at 916 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  Plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity.  *Id.* at 917.  To do this, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at

20

the time of the challenged conduct." *Id.* (quoting *al-Kidd*, 563 U.S. at 735 (internal quotation marks omitted)).

The Supreme Court has repeatedly stressed the "importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal quotation marks omitted)). However, "'[w]hen qualified immunity is asserted at the pleading stage,' as here, 'the precise factual basis for the plaintiff's claim or claims may be hard to identify.'" *Id.* (quoting *Pearson*, 555 U.S. at 238–39). Thus, the Sixth Circuit has cautioned that "it is *generally* inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020) (emphasis added) (quoting *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)). "Although an officer's 'entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point,' that point is *usually* summary judgment and not dismissal under Rule 12." *Id.* (emphasis added) (quoting *Wesley*, 779 F.3d at 433–34); *see also Evans-Marshall v. Bd. Of Educ. Of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring) (reasoning that the fact-intensive nature of the qualified immunity test makes it "difficult for a defendant to claim qualified immunity on the pleadings *before discovery*" (emphasis in original)). Nonetheless, "a qualified immunity defense can be raised at various stages of the litigation including the pleading stage in a motion to dismiss[.]" *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994).

In the instant case, defendants assert that they are entitled to qualified immunity on all of plaintiff's claims [Doc. 66, pp. 4, 15–16]. However, plaintiff alleges that defendants violated his known and established constitutional rights at several different points during the detention and subsequent arrest [Doc. 70, pp. 19–20]. Because the Court has already concluded that all of plaintiff's claims, with the exception of his unreasonable seizure claims, are *Heck*-barred, the Court will only address the qualified immunity issue as it relates to the remaining claims.

Although a seizure may be lawful at its inception, it can nevertheless violate the Fourth Amendment if "its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (citing *United States* v. *Jacobsen*, 466 U.S. 109, 124 (1984)). Furthermore, "[a] seizure that is justified… can become unlawful if it is prolonged beyond the time reasonably required to complete [its] mission." *Id.*

The Court finds that granting dismissal under Rule 12(b)(6) on the ground of qualified immunity is appropriate in this case because plaintiff has not alleged a plausible Fourth Amendment claim of unreasonable seizure. While the Court acknowledges that a seizure that is lawful at its inception may nevertheless violate the Fourth Amendment, even accepting all of the facts in plaintiff's amended complaint as true, he has not alleged any conduct that could plausibly be considered a Fourth Amendment violation. Specifically, plaintiff alleges that his Fourth Amendment rights were violated by the "continued and prolonged detention" that occurred during the 2.5-mile hike back to the trailhead

[Doc. 37 ¶ 50]. Plaintiff raises no specific complaints about the conditions of the hike back to the trailhead, but simply suggest that he should have been "issued citations for the respective violations, placed under arrest, or advised that he was free to leave" [*Id.*, ¶ 46]. But plaintiff himself admits that he made the request to hike back to the trailhead [*Id.*, ¶ 15]. Ultimately, then, plaintiff's complaint is that the rangers allowed him to hike back to the trailhead, as he requested, before advising him that he was under arrest.

Plaintiff has not met his burden on either prong of the qualified immunity analysis, even at the lenient Rule 12(b)(6) stage. Even in his response brief, plaintiff does not explain why the hike back to the trailhead was an "unreasonable seizure," but instead, merely cites language from *Caballes* regarding the prolonging of a detention for reasons unrelated to a stop's purpose [Doc. 70, p. 17 (citing *Caballes*, 543 U.S. at 407)]. He does not explain how it was "unreasonable" for the rangers to allow him to hike back to the trailhead, unrestrained, rather than placing him under arrest at Abrams Falls and then forcing him to hike back to the trailhead. The Court is aware of no requirement, nor has plaintiff cited any requirement, that law enforcement place an individual under arrest at the first moment that probable cause arises, rather than waiting to place the individual under arrest until they have arrived at a more convenient or safe location to effectuate the arrest. Given the lack of any allegation that the rangers subjected plaintiff to any negative conditions during the hike back to the trailhead, the Court finds that plaintiff's allegations regarding the hike back to the trailhead are not sufficient to constitute a constitutional violation under the Fourth Amendment.

Moreover, even if plaintiff could have plausibly alleged a Fourth Amendment violation with regard to the return hike to the trailhead, the Court finds that plaintiff has not plausibly alleged that such right was clearly established at the time of the alleged violation. "Clearly established law is not defined at a high level of generality, but must be particularized to the facts of the case." *Vanderhoef v. Dixon*, 938 F.3d 271, 278 (6th Cir. 2019) (internal quotation marks and citations omitted). A plaintiff may meet this burden by presenting case law "with a fact pattern similar enough to have given fair and clear warning to officers about what the law requires." *Id.* (internal quotation marks omitted) (citing *Hopper v. Plummer*, 887 F.3d 744, 755 (6th Cir. 2018)). Although such case law need not "be on all fours" with the instant fact pattern, the "question must be so settled that 'every reasonable official would have understood that what he is doing violates [the] right' at issue." *Id.* at 278–79 (quoting *al-Kidd*, 563 U.S. at 741). Plaintiff here has cited absolutely no case law with a similar fact pattern to the instant facts. Instead, the only case that plaintiff cites in his briefing on the issue of qualified immunity is *Caballes*, which he cites for the generalized proposition that a lawful seizure may become unlawful if prolonged beyond its initial lawful purpose [Doc. 70, p. 17]. Because plaintiff has pointed to no case law that would put a reasonable officer on notice that the seizure at issue here would be unreasonable, he has not plausibly alleged a claim that could survive the defense of qualified immunity.

Ultimately, because the Court finds that, even accepting all of the allegations in the amended complaint as true, plaintiff has not alleged a plausible Fourth Amendment

violation, nor has he plausibly alleged that any such violation was clearly established such that a reasonable officer would have been on notice that his actions were unlawful, the Court finds that defendants are entitled to qualified immunity on plaintiff's Fourth Amendment unreasonable seizure claim. Accordingly, defendants' motion to dismiss will be **GRANTED** as to this claim and plaintiff's unreasonable seizure claim will be **DISMISSED**.

## IV. Conclusion

For the reasons set forth above, defendant's motion to dismiss [Doc. 65] is **GRANTED**. Plaintiff's claims are **DISMISSED**. The Clerk is **DIRECTED** to close this case.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

25